IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



ORILLION CRADDOCK,

     Plaintiff,

v.                        Civil Action No. 3:12CV430

CLYD N. FISHER, et al.,

     Defendants.

## MEMORANDUM OPINION

Orillion Craddock, a federal prisoner proceeding pro se and in forma pauperis, filed this Bivens[1] action. The matter is before the Court on Defendants Clyd N. Fisher's and Scott Leonard's Motion for Judgment on the Pleadings ("Motion to Dismiss") and Motion for Summary Judgment and the Court's evaluation pursuant to 28 U.S.C. § 1915(e)(2) and 1915A. For the reasons stated below, the Court will grant Defendants' Motion to Dismiss, in part, will grant Defendants' Motion for Summary Judgment, and will dismiss the action.

## I.   MOTION TO DISMISS STANDARD

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C.

---

[1] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

§ 1915(e)(2); <u>see</u> 28 U.S.C. § 1915A. The first standard includes claims based upon "'an indisputably meritless legal theory,'" or claims where the "'factual contentions are clearly baseless.'" <u>Clay v. Yates</u>, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993); <u>see also</u> <u>Martin</u>, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1950 (2009).

2

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).   Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Id. at 555 (citations omitted).   Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," id. (citation omitted), stating a claim that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atl. Corp., 550 U.S. at 556).   Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).

3

Lastly, while the Court liberally construes pro se complaints, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, sua sponte developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. See Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF ALLEGATIONS AND CLAIMS

Craddock raises two claims in his sworn Complaint. In Claim One, he argues that Defendants Detective Clyd N. Fisher, Detective Scott Leonard, and the Richmond City Police Department "violated [his] Fourth Amendment[2] constitutional right not to be subjected to unlawful searches, seizures, or arrest." (Compl. 5.)[3] In Claim Two, Craddock claims "[m]y Eighth

---

[2] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

[3] The Court employs the pagination assigned by the CM/ECF docketing system for citations to and quotations from Craddock's Complaint. The Court corrects the capitalization in the quotations from Craddock's Complaint.

Amendment[4] constitutional right was violated due to unlawful incarceration, and loss of freedom." (Id. at 10.) Craddock fails to suggest how the process used to obtain his conviction violated the Eighth Amendment. Cf. Shanklin v. Seals, No. 3:07cv319, 2010 WL 1225741, *8 (E.D. Va. Mar. 26, 2010) (explaining that when conduct plaintiff complains of occurred prior to his conviction, "the Eighth Amendment prohibition against cruel and unusual punishment does not apply" (citing Graham v. Connor, 490 U.S. 3886, 394 (1989))). Moreover, to the extent he seeks to raise a constitutional claim under the Eighth Amendment challenging his unlawful incarceration, such claim is legally frivolous. See Heck v. Humphrey, 512 U.S. 477 (1994); see infra Part III.A. Claim Two will be dismissed.

Thus, the action proceeds on Craddock's Fourth Amendment claim in which he alleges that his federal firearm conviction was invalid due to a defective search warrant and illegal search. (Compl. 8.) Specifically, Craddock argues that Defendant Fisher applied for a search warrant and Defendant Leonard executed the warrant upon a residence located at 305 Dundee Avenue, Richmond, Virginia 23225, specifying that the house was to be searched for weapons and "included the incorrect factual assertion that [Craddock] resided at the address." (Id.

---

[4] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

at 5.)  Craddock contends that the warrant "was constitutionally flawed" for a litany of reasons including that Craddock did not live at that address, the warrant failed to specify the areas of the home to be searched, Defendant Fisher "lied in his warrant affidavit . . . so he could unlawfully arrest" Craddock, and Defendant Leonard executed the warrant in Craddock's absence and knowing Craddock did not reside at the address.  (<u>Id.</u> at 6-7.) Craddock argues that the illegal search yielded evidence "to arrest Mr. Craddock for murder and unlawful gun possession." (<u>Id.</u> at 8.)  Craddock states that "the murder was nolle prose[d] by the state, but the gun possession was transferred to the federal authorities."  (<u>Id.</u>)  Craddock contends that in light of the defective search warrant he "has been unlawfully incarcerated."  (<u>Id.</u>)

Craddock seeks compensatory and punitive damages, and "vacation or invalidation of [his] criminal conviction in Case No. 3:08CR49."  (<u>Id.</u> at 12.)  As discussed below, Craddock's claims seeking invalidation of his conviction and sentence are barred by <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), and any Fourth Amendment claim for damages that may withstand <u>Heck</u> is barred by the statute of limitations and also lacks merit.

### III. MOTION TO DISMISS ANALYSIS

**A.    Claims Barred By Heck v. Humphrey, 512 U.S. 477 (1994)**

The basic premise behind Craddock's complaint, that he can vacate or alter his criminal conviction and obtain monetary damages stemming from his purportedly improper incarceration, through a civil lawsuit "is legally frivolous under Heck v. Humphrey, 512 U.S. 477 (1994), and related cases." Payne v. Virginia, No. 3:07CV337, 2008 WL 1766665, at *2 (E.D. Va. Apr. 17, 2008). In Heck, the Supreme Court emphasized that civil tort actions are "not appropriate vehicles for challenging the validity of outstanding criminal judgments." Heck, 512 U.S. at 486. The Supreme Court then held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Heck, 512 U.S. at 486-87 (internal footnote omitted). The Supreme Court then required that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can

demonstrate that the conviction or sentence has already been invalidated." Id. at 487. The rationale in Heck and related cases applies with equal force to Bivens actions. See Omar v. Chasanow, 318 F. App'x 188, 189 n* (4th Cir. 2009) (citing Clemente v. Allen, 120 F.3d 703, 705 (7th Cir. 1997); Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir. 1995); Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995)).

The Supreme Court has extended Heck to civil rights actions that do not directly challenge confinement, but instead contest procedures which necessarily imply unlawful confinement. See Edwards v. Balisok, 520 U.S. 641, 646 (1997). In Balisok, the Supreme Court concluded that a challenge based upon the purported bias of the decision-maker, necessarily implied the invalidity of the sanction imposed by the decision-maker and thus was subject to the bar announced in Heck. The Supreme Court summarized that Heck and the related cases teach that:

> [A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

Heck and related cases bar Craddock's claim seeking invalidation of his sentence and subsequent release as it is predicated on his assertion that his conviction and

incarceration are improper.   See id. at 79 (citing Preiser v. Rodriguez, 411 U.S. 475, 489 (1973)).  Craddock also presents no allegation that the federal court has invalidated his current conviction.  Heck, 512 U.S. at 486-87.  Thus, Craddock's claim is frivolous under Bivens.  Id. at 81-82; see Preiser, 411 U.S. at 500 (holding that writ of habeas corpus is the sole federal remedy when an inmate challenges the fact of imprisonment and relief sought is finding that the inmate is entitled to release).  Accordingly, the Court will grant Defendants' Motion to Dismiss in part.

Of course, the Supreme Court has noted that certain Fourth Amendment claims for damages potentially may be raised in a § 1983 action.  See Heck, 512 U.S. at 487 n.7.[5]  No need exists to extensively explore the applicability of Heck to Craddock's inchoate Fourth Amendment claim for damages because his Fourth Amendment claim is barred by the statute of limitations.

---

[5] The Court explained:

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in trial resulting in the § 1983 plaintiff's still outstanding conviction.  Because of doctrines like independent source and inevitable discovery and especially harmless error, . . . such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.

Heck, 512 U.S. at 487 n.7 (internal citations omitted).

B.   **Fourth Amendment Claim Is Untimely**

Under 28 U.S.C. § 1915(e)(2), the Court must dismiss claims which the relevant statute of limitations clearly bars. Brown v. Harris, No. 3:10CV613, 2012 WL 12383, at *1 (E.D. Va. Jan. 3, 2012) (citing Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655-57 (4th Cir.2006); Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995)). Because no explicit statute of limitations for 42 U.S.C. § 1983 actions exists, the courts borrow the personal injury statute of limitations from the relevant state. Nasim, 64 F.3d at 955 (citing Wilson v. Garcia, 471 U.S. 261, 266-69 (1985)). Virginia applies a two-year statute of limitations to personal injury claims. See Va. Code Ann. § 8.01-243(A) (West 2014). Hence, Craddock should have filed his Complaint within two years from when the underlying claims accrued. "A claim accrues when the plaintiff becomes aware of his or her injury, United States v. Kubrick, 444 U.S. 111, 123 (1979), or when he or she 'is put on notice . . . to make reasonable inquiry' as to whether a claim exists." Almond v. Sisk, No. 3:08cv138, 2009 WL 2424084, at *4 (E.D. Va. Aug. 6, 2009) (omission in original) (quoting Nasim, 64 F.3d at 955).

Craddock filed his Complaint May 1, 2012.[6]   Thus, for Craddock's claims alleging an invalid search and seizure to be

---

[6] Craddock signed his Complaint on this date. (Compl. 12.) Craddock or the institution, however, mailed the Complaint on

timely, the claims must have accrued after May 1, 2010.   The
Complaint fails to contain any facts indicating that Craddock's
claims accrued after May 1, 2010.   Instead, Craddock challenges
the search warrant issued on August 10, 2007 and three searches
that occurred on August 11, 2007, April 3, 2008, and April 14,
2008.   (Compl. 7.)   Craddock states that his claims are timely
because "his judgment in his criminal case was not affirmed
until on January 14, 2010; and his § 2255 motion . . . is still
pending." (Id. at 9.)   First, even using January 14, 2010 as
the date his claim accrued, the claim would still be barred by
the two-year limitation period.   More importantly, Craddock's
claims of illegal search and seizure arise from events on August
11, April 3, 2008, and April 14, 2008 and accrued on those
dates, not after the conclusion of his criminal case or
collateral challenge.   See Hornback v. Lexington-Fayette Urban
Cnty. Gov't, 543 F. App'x 499, 502 (6th Cir. 2013); Smith v.
McCarthy, 349 F. App'x 851, 857 (4th Cir. 2009) (finding § 1983
claims challenging search and seizure untimely because claims
accrued as of date of search).   Nothing in Craddock's Complaint
suggests that he lacked awareness that the search took place as
of the date of the search.   Accordingly, Craddock's Fourth

---

June 1, 2012.   (ECF No. 1-6, at 1.)   While the Court believes
that Craddock waited nearly a month the mail his Complaint, even
using the May 1, 2012 date, Craddock's claim is untimely.

Amendment claim is also barred by the statute of limitations. Nevertheless, even if Craddock's Fourth Amendment claim was somehow timely, as explained below, Defendants are entitled to summary judgment on any remaining Fourth Amendment claim.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." Id. at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. Anderson, 477 U.S. at 251 (citing Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1872)). "'[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed.'" Id. (quoting Munson, 81 U.S. at 448).

In support of their Motion for Summary Judgment, Defendants cite to Craddock's Complaint and several of the attached exhibits, including:  1) the Affidavit for Search Warrant for 305 Dundee Avenue dated August 11, 2007 (Compl. Ex. D(1)-(2); and 2) the search warrant issued on August 11, 2007 (id. Ex. D(3)).

As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. Celotex Corp., 477 U.S. at 324.  Craddock has not responded to the Motion for Summary Judgment.  Craddock's failure to respond to the Motion for Summary Judgment permits the Court to rely solely on the submissions of the Defendants in deciding the

Motion for Summary Judgment. See Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'" (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 & n.7 (5th Cir. 1992))); see Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . ."). Furthermore, "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." E.D. Va. Loc. Civ. R. 56(B).

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motion for Summary Judgment. All permissible inferences are drawn in favor of Craddock.

## V.  UNDISPUTED MATERIAL FACTS

On August 11, 2007, Defendant Fisher, a Detective with the City of Richmond Police Department, sought a search warrant for 305 Dundee Avenue, in Richmond, Virginia. (Compl. Ex. D(1) and (D)(2).) In support of the affidavit, Defendant Fisher swore:

> On August 10, 2007, at approximately 2231 hours, police were called to the residence of 305 Dundee Avenue. Upon arrival they found the victim Naeem Albertus BROWN, shot and unresponsive and laying on

the front [steps] of the residence.   Following the shooting incident, the suspect Orillion CRADDOCK was observed running around the building and down the alley.   Prior to the shooting incident the suspect CRADDOCK was observed going into the basement of the residence situated at 305 Dundee Avenue.   Witnesses reported prior knowledge of the suspect CRADDOCK utilizing the basement situated at 305 Dundee Avenue while possessing a firearm.

(Id. Ex. D(1).)   In the affidavit, Defendant Fisher explained that the search warrant was requested to seek evidence in relation to the first-degree murder offense.   (Id. Ex. D(2).) Defendant Fisher requested to search "[t]he entire residence (including the basement) located at 305 Dundee Avenue (two story house, white in color with house numbers clearly visible above the front door) to include all curtilage, which is located in the City of Richmond . . . ."   (Id.)   Defendant Fisher requested that the warrant be issued to search for "[b]lood, weapons, DNA evidence, firearms and any evidence connected with the commission of the crime of First Degree Murder."   (Id.)   Based on the information contained in the affidavit, a magistrate found probable cause existed for the search and issued the search warrant on August 11, 2007.   (Id. Ex. D(4).)

The search warrant was executed on August 11, 2007, by Defendant Leonard, a Detective with the City of Richmond Police Department.   (Id. Ex. D(5).)   Defendant Leonard found and seized a shotgun and cartridges from 305 Dundee Avenue.   (Id.)   Police conducted subsequent searches of 305 Dundee Avenue on April 3,

2008 and April 14, 2008.  (Compl. 5-9.)  Craddock did not reside at 305 Dundee Avenue at the time the three searches were conducted; his grandmother, Pearl Brown resided at the home. (See id. at 5-7; Ex. A, at 1-2.)  Evidence recovered from these searches was used in his criminal prosecution.  (Id. at 8.) This Court convicted Craddock of one count of possession of a firearm by a convicted felon and one count of possession of an unregistered sawed-off shotgun and was sentenced to 120 months of incarceration.  (See Mem. Supp. Summ. J. 1-2 (citing United States v. Craddock, No. 3:08CR49 (E.D. Va. October 14, 2008), ECF No. 53).)

## VI.  FOURTH AMENDMENT ANALYSIS

The Fourth Amendment "protects persons against unreasonable searches of 'their persons [and] houses' and thus . . . is a personal right that must be invoked by an individual." Minnesota v. Carter, 525 U.S. 83, 88 (1998) (alteration in original) ("[T]he Fourth Amendment protects people, not places." (citing Katz v. United States, 389 U.S. 347, 351 (1967))). Thus, "'in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable.'"  Id.  (quoting Rakas v. Illinois, 439 U.S. 128, 143-44 & n.2 (1978)).  Moreover, the expectation

of privacy must have a "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law to understandings that are recognized and permitted by society." Id. The burden lies with Craddock to show that he has a reasonable expectation of privacy in the place searched. United States v. Rusher, 966 F.2d 868, 874 (4th Cir. 1992) (citation omitted). As discussed below, Craddock fails to argue, much less establish, that he had an expectation of privacy in 305 Dundee Avenue.

A person who lives at a residence, whether as an owner or tenant, has a reasonable expectation of privacy in the residence, even if he is not on the premises at the time of the search. See United States v. Gray, 491 F.3d 138, 144 (4th Cir. 2007); United States v. Beckford, 962 F. Supp. 767, 770 (E.D. Va. 1997). Craddock, however, adamantly and repeatedly asserts that he did not live at 305 Dundee Avenue at the time the three searches took place. He provides a copy of his presentence report to establish that he lived in another location. (Compl. Ex. C.) Thus, it is undisputed that Craddock did not live in the home.

"[I]n some circumstances a person may have a legitimate expectation of privacy in the house of someone else." Carter, 515 U.S. at 89 (explaining that an overnight guest may claim Fourth Amendment protection); see Gray, 491 F.3d at 144

(explaining that "relatives of home owners who regularly reside at the residence" may be protected (citing <u>Bumper v. North Carolina</u>, 391 U.S. 543, 546-48 (1968))). Craddock fails to demonstrate those circumstances are present here. Indeed, Craddock puts forth no evidence demonstrating that he had a reasonable expectation of privacy in 305 Dundee Avenue. The record reflects that Craddock visited the home and engaged in illegal activity therein. A person, like Craddock, "who is merely present with the consent of the householder[,] may not" claim the protection of the Fourth Amendment. <u>Carter</u>, 515 U.S. at 90 (citation omitted). Similarly, the Fourth Amendment fails to protect individuals, like Craddock, who are engaging in illegal activity in a residence that is not their own. <u>Cf.</u> <u>Gray</u>, 491 F.3d at 146 (holding that person using an apartment to traffic drugs is not a social guest and has no reasonable expectation of privacy).

Craddock fails to argue, much less demonstrate, that he had a reasonable expectation of privacy in 305 Dundee Avenue. Thus, he fails to establish any entitlement to the Fourth Amendment's protection with regard to the search of the residence and the recovery of the gun and other items used in his criminal prosecution. Craddock's Fourth Amendment claim is frivolous and will be dismissed.

## VII. CONCLUSION

The Court will grant in part Defendants' Motion to Dismiss. To the extent a Fourth Amendment challenge survives Heck and is timely filed, the Court grants Defendants' Motion for Summary Judgment. Craddock's claims and the action will be dismissed.

Date: *April 21, 2015*
Richmond, Virginia

_____ /s/ _REP_

Robert E. Payne
Senior United States District Judge